STATE OF WEST VIRGINIA

*v.*

DORSEL E. BAILEY

(No. 13521)

Decided December 9, 1975.

*Kennad L. Skeen, Larry L. Skeen and Lawrence B. Mentzer* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Richard E. Hardison,* Deputy Attorney General, *Fredric J. George,* Assistant Attorney General, for defendant in error.

FLOWERS, JUSTICE:

The defendant, Dorsel Bailey, was convicted in the Circuit Court of Jackson County of grand larceny of an automobile and was sentenced to one to ten years in the state penitentiary. An employee of the Sheriff of Jackson County served on the Grand Jury which returned the indictment against him. The defendant sought to quash the indictment on the basis of the disqualification of the Grand Juror and the resulting infringement on defendant's constitutional rights. Defendant assigned the adverse ruling of the circuit court as one of his principal grounds of error. He also challenges the refusal of the trial court to instruct the jury concerning the misdemeanor of "joyriding" under *W. Va. Code,* 17A-8-4, as amended. Other errors, which were assigned by the defendant in his petition but not pursued in his brief, involve the admissibility of certain evidence, the suffi-

ciency of the evidence to support the verdict and judgment, and the refusal of the trial court to give a defense instruction on intoxication.

The grand larceny conviction is based upon the defendant's admitted, nonconsensual "taking" of an automobile owned by James Pauley. The defendant predicated his defense upon alternative theories of not guilty by reason of intoxication or guilty of the lesser offense of "joyriding."

The defendant testified that on the evening the offense was committed he had left his place of employment at about 4:00 p.m. and visited three "beer joints" where he drank twenty-four to thirty bottles of beer. He interrupted his activities once during the evening to go home to shower and change his clothes. By 10:00 p.m. when he left the last tavern, he said he was "getting pretty drunk." He walked around town in the vicinity of the Ripley Municipal Building and, since he "didn't have nothing to do," "started looking in the cars." He looked at two others cars before finding the Pauley car in its owner's driveway with the keys in it. He said that other details of the taking were somewhat "hazy," but the owner of the car recalled that it was about 11:00 p.m. when he heard his car "start up." Pauley got outside in time to see it being driven away and immediately reported the theft to the City Police office located 70 to 80 feet away. A report broadcast by the Police Chief alerted two Jackson County Deputy Sheriffs, Long and Guthrie, who proceeded toward Interstate 77 which, in a northerly direction from Ripley, leads into Ohio. As they approached the intersection of that highway at Silverton, seven miles north of Ripley, they saw the stolen car stopped at the gasoline pump of a service station.

The deputies used their cruiser to block the car from the front, but as Deputy Long approached the car, the defendant spun his car wheels in reverse and then came toward Long. Thinking the driver was trying to run over him, Deputy Long fired a shot through the passenger side of the windshield. The driver of the vehicle then

swerved past the gasoline pump, "jumped a planter" and proceeded toward Ravenswood. As the vehicle pulled out, the deputy fired again and hit a rear tire. A third shot, fired while in pursuit of the vehicle, struck a second rear tire.

After being driven only a short distance, the car went out of control and then struck a bank on the right side of the road. The defendant emerged from the car, ran across the highway, jumped over a fence, and ran down into a field. In flight, he knocked over a beehive and ran into a tree. He was found unconscious by the two deputies about twenty minutes after the theft of the vehicle had been reported. He was taken to the emergency room of Jackson General Hospital, where he was treated for bee stings and released.

Deputy Long testified that he smelled no alcohol on the defendant, although he admitted that Bailey "possibly had been drinking some, and under those circumstances, normal would be hard to judge." Deputy Guthrie and an emergency medical technician at the scene testified that they detected no odor of alcohol from the defendant and observed no behavior indicating his intoxication. Another ambulance attendant, a city policeman, and the deputy who escorted the defendant into jail could not say he was intoxicated. To the contrary, a fellow inmate at the county jail, testified that he smelled alcohol on the defendant and observed that he had been drinking. The witness could not state, however, whether the defendant was intoxicated.

The defendant testified that he had stolen three other automobiles, adding that on each occasion he had been intoxicated at the time. When he committed his last offense he took a car which was also in close proximity to the police station. He claimed he had no intention of permanently depriving the owner of his vehicle. He denied that he ever intended, or had any recollection of stating to others that he intended, to take the car to Ohio. This testimony was contradicted by an inmate who

testified on rebuttal, that the defendant said "he was going to Ohio," but he didn't say when he was going.

## I

The defendant maintains that his constitutional rights were violated and the indictment against him was void because Shirley J. McCrady, an employee of the Sheriff of Jackson County, served on the grand jury. The thrust of this contention is that Miss McCrady was an "officeholder," disqualified from grand jury service under *W. Va. Code*, 52-2-2, as amended, and as a law enforcement employee was disqualified for bias and prejudice. The defendant contends that, since the sheriff of Jackson County is disqualified as an "officeholder" within the meaning of the statute, any employee of the sheriff is also disqualified. He reasons that the same public policy which mandates the disqualification of the sheriff for jury service appertains to the sheriff's deputies and by an extension of logic to an employee selected by the sheriff.[1]

The qualifications of grand jurors are now prescribed by statute. *W. Va. Code*, 52-2-2, as amended, provides in part:

"The jury commissioners appointed under the provisions of section three of article one of this chapter shall select and draw persons for grand juries. * * * The persons so listed shall be of good moral character, who have never been convicted of a felony or of any scandalous offense; and shall have been bona fide citizens of the State and county for at least one year immediately preceeding the preparation of the list, and *shall not be officeholdes under the laws of the United States or of this State:* Provided, that the term 'officeholders' shall not be taken, read or understood to include notaries public." (Italics supplied.)

The term "officeholders under the laws of * * * this State" necessarily implies the existence of a public office. This Court has previously considered the definition

---

[1]*Robinson v. Oklahoma*, 148 F. 830 (8th Cir. 1906).

and juxtaposition of the terms "officer" and "public office."

> "* * * As a general rule it may be stated that a position is a public office when it is created by law, with duties cast on the incumbent which involve an exercise of some portion of the sovereign power and in the performance of which the public is concerned, and which are continuing in their nature and not occasional or intermittent. But one who merely performs the duties required of him by persons employing him under an express or implied contract, though such persons themselves be public officers, and though the employment be in or about public work or business, is a mere employee." *State ex rel. Key v. Bond,* 94 W. Va. 255, 260, 118 S.E. 276, 279 (1923).

> "Among the criteria to be considered in determining whether a position is an office or a mere employment are whether the position was created by law; whether the position was designated an office; whether the qualifications of the appointee have been prescribed; whether the duties, tenure, salary, bond and oath have been prescribed or required; and whether the one occupying the position has been constituted a representative of the sovereign." Point five, syllabus, *State ex rel. Carson v. Wood,* 154 W. Va. 397, 175 S.E.2d 482 (1970).

Miss McCrady served as a radio operator in the office of the Sheriff of Jackson County. In such position, she exercised no sovereign power and held no position created by law with prescribed duties, qualifications and tenure. No bond or oath were required of her. Her position in the sheriff's office was one of "mere employment." She could not, therefore, be deemed an "officeholder" within the meaning of *W. Va. Code,* 52-2-2, as amended, and thus be disqualified from grand jury service.

Whether the nature of her employment, however, created such bias or prejudice as to disqualify her must be

answered independently of the statute. In the absence of statutory requirements to the contrary, bias or prejudice, resulting from the relationship of an individual grand juror to a particular trial participant, is ordinarily not a disqualification. 1 Torcia, Wharton's Criminal Procedure, §197, p. 423 (12th ed. 1974); 41 Am. Jur. 2d *Indictments and Informations* §246, p. 1031.

The defendant cites numerous cases in which the failure to strike certain persons from petit juries has constituted reversible error.[2] He contends that the law governing petit juries is equally applicable to grand juries.[3] In *State v. West*, W. Va., 200 S.E.2d 859 (1973), this Court held that employees of a prosecutorial or enforcement agency of this State were *per se* subject to a challenge for cause as petit jurors in a criminal prosecution. In *State v. Kilpatrick*, _____ W. Va. _____, 210 S.E.2d 480 (1974), we held that a father should be excluded from a petit jury upon motion where his son was a prosecuting witness who was to take an active part in the prosecution and who was particularly interested in the result of the case. As noted in *Kilpatrick,* we have frequently held that an individual is disqualified from petit jury service when his relationship with a specific trial participant could create the suspicion of prejudice.

We do not, however, find that such tests apply to grand jurors. *State v. Nuckols, supra,* does not so hold. It relates solely to the selection and empaneling of grand jurors and not to their individual qualifications.

The grand jury is an accusatory body, not a judicial body, and as such has the right and obligation to act on its own information, however acquired. *W. Va. Code,* 52-2-8. Its oath infers that it may be called upon to act in

---

[2]*Robinson v. Oklahoma, supra; State v. Butts,* 349 Mo. 213, 159 S.W.2d 790 (1942); *State v. Langley,* 342 Mo. 447, 116 S.W.2d 38 (1938); 47 Am. Jur. 2d *Jury* §98, p. 708.

[3]*State v. Nuckols,* 152 W. Va. 736, 166 S.E.2d 3 (1968).

the case of enemies and friends. *W. Va. Code* 52-2-5. 38 Am. Jur. 2d *Grand Jury* §7, pp. 951-952.

Moreover *W. Va. Code* 52-2-12 provides that no indictment shall be quashed or abated because of the incompetency or disqualification of any one or more of the grand jurors. The curative provisions of this statute are based on reason and sound public policy. *State v. Martin,* 38 W. Va. 568, 18 S.E. 748 (1893). It would be detrimental to the public interest, if a large number of indictments should be liable to be quashed or abated because one grand juror was disqualified. *State v. Driver,* 88 W. Va. 479, 107 S.E. 189 (1921); *State v. Martin, supra; State v. Henderson,* 29 W. Va. 147, 1 S.E. 225 (1886).

The application of the curative provisions of *W. Va. Code* 52-2-12 to the facts of this case does not impinge upon the constitutional parameters of the Fifth or Fourteenth Amendment of the United States Constitution or of Article III, Section 4 of the Constitution of West Virginia. The contention that a grand juror has a "suspicion of prejudice" because of the nature of the juror's employment cannot, in this instance, be elevated to the status of constitutional deprivation.

While the United States Supreme Court, in *Beck v. Washington,* 369 U.S. 541 (1962), speculated that due process *may* require a state, having once resorted to a grand jury procedure, to furnish an unbiased grand jury; the question was left unresolved, inasmuch as the grand jury in *Beck* was found to be an unbiased one. In view of the accusatory, non-judicial nature of the grand jury, it cannot be said that the mere suspicion of prejudice of a grand juror, resulting from the nature of her employment, without any demonstration of actual prejudice, constitutes a denial of due process of law.

## II

The second ground of error urged by the defendant was the failure of the court to give a proffered instruction on the offense of "joyriding." Since the defendant was not charged with that offense, it would be obliga-

tory on the court to so instruct the jury only if "joyriding" were a lesser included offense to grand larceny and the evidence was sufficient to warrant the instruction.

The defendant was charged under *W. Va. Code*, 61-3-13, as amended, which provides:

> "If any person commit simple larceny of goods or chattels, he shall, if they be of the value of fifty dollars or more, be deemed guilty of grand larceny, and, upon conviction thereof, shall be confined in the penitentiary not less than one nor more than ten years; * * *."

The statute which describes the offense commonly referred to as "joyriding," provides:

> "Any person who drives a vehicle, not his own, without consent of the owner thereof, and with intent temporarily to deprive said owner of his possession of such vehicle, without intent to steal the same, is guilty of a misdemeanor." *W. Va. Code*, 17A-8-4, as amended.

The general rule governing the consideration of what constitutes a lesser included offense has been stated: "If the lesser offense requires the inclusion of an element not required in the greater offense, the lesser is not necessarily included in the greater." 2 Torcia, Wharton's Criminal Procedure, §375, p. 337-39. Stated more simply, the lesser offense must be a necessary ingredient of the greater offense. *Henry v. State*, 273 Md. 131, 328 A.2d 293 (1974).

Larceny, as defined in this jurisdiction, is the taking and carrying away of the goods and chattels of another, with the intent to deprive the owner of his property *permanently. State v. Pietranton*, 137 W. Va. 477, 72 S.E.2d 617 (1952). Joyriding is defined by statute as: The taking of a vehicle "with intent *temporarily* to deprive said owner of his possession of such vehicle, *without intent to steal* the same." (Italics supplied.)

The obvious distinction between grand larceny and joyriding is that the former requires an intent to perma-

nently deprive the owner of his property, while the latter mandates an intent to temporarily deprive the owner. *Crow v. Coiner,* 323 F. Supp. 555 (N.D. W. Va. 1971). The intent to permanently deprive cannot be said to be a progression of an intent to temporarily deprive. *Sandoval v. People,* 176 Colo. 414, 490 P.2d 1298 (1971). Thus the offense of "joyriding" requires the inclusion of an element not required in the greater offense of larceny and cannot be regarded as a "lesser included offense" to larceny. *Ashby v. State,* 24 Ala. App. 466, 136 So. 483 (1931); *State v. Cobb,* 2 Ariz. App. 71, 406 P.2d 421 (1965); *People v. Thomas,* 23 Cal. Rptr. 161, 373 P.2d 97 (1962); *Sandoval v. People, supra; Lee v. State,* 189 Ind. 538, 127 N.E. 274 (1920); *Henry v. State, supra.*

Some joyriding statutes merely provide for the absence of an intent to permanently deprive the owner of his vehicle. Our statute provides for the presence of an intent to temporarily deprive the owner. The former type of statute can account for the decision in at least two of the minority of states holding "joyriding" to be a lesser included offense of larceny.[4] There may be merit to such a policy but our statute clearly does not express it.

The trial court, therefore, properly refused to give the instruction on the misdemeanor of "joyriding" and left the state with the more onerous burden of proving grand larceny and, therewith, a higher attendant risk of the defendant's exoneration. *Compare, Robinson v. Commonwealth,* 190 Va. 134, 56 S.E.2d 367 (1949); *Slater v. Commonwealth,* 179 Va. 264, 18 S.E.2d 909 (1942).

As to the refusal of the trial court to instruct the jury on the defense of drunkenness, we find no error. The instruction presented intoxication as a complete defense. Voluntary drunkenness does not ordinarily excuse a crime. *State v. Robinson,* 20 W. Va. 713 (1882). The only suggestion of intoxication came from the defendant him-

---

[4]*Williams v. State,* 250 So.2d 11 (Fla. App. 1971); *Spencer v. State,* 501 S.W.2d 799 (Tenn. 1973).

self while the testimony of four others, including one fellow inmate at the jail, could, at most, establish that "he was drinking . . . I couldn't say to what extent." The defendant's own acts tend to contradict that he was intoxicated to any high degree. He recalled looking for cars, inspecting two cars without keys before finding the one he took. He was able to consume twelve to fourteen beers, and then remember to go home to shower and change his clothes. His northerly direction on Interstate 77 after the theft corroborates his expressed intent to go to Ohio and the stop for fuel reveals an awareness of a significant factor in his ability to get there. The evidence falls far short of warranting the proffered instruction. *State v. Phillips*, 80 W. Va. 748, 93 S.E. 828 (1917); *State v. Kidwell*, 62 W. Va. 466, 59 S.E. 494 (1907); 21 Am. Jur. 2d *Criminal Law* §107, p. 185-86.

We have reviewed the other assignments of error and find them similarly to be without merit.

For reasons stated in this opinion, the judgment of the Circuit Court of Jackson County is affirmed.

*Affirmed.*

HADEN, CHIEF JUSTICE, *dissenting:*

I respectfully dissent to that part of the holding of the majority relating to the trial court's refusal to charge the jury on the offense of "joyriding."

The felony of larceny of an automobile involves the taking of a vehicle without the owner's permission and with intent *permanently* to deprive the owner of his property. Comparatively, the misdemeanor offense of joyriding involves the taking of an automobile without the owner's permission with intent *temporarily* to deprive the owner of his vehicle. *Crow v. Coiner*, 323 F. Supp. 555 (N.D. W. Va. 1971).

If the jury had been permitted to consider that the accused took the victim's automobile while in a state of intoxication for the purpose or nonpurpose of joyriding,

perhaps, that body, upon the conflicting evidence in this case, would have chosen to convict Mr. Bailey of the misdemeanor offense. Even as summarized by the opinion writer for the majority, the basic facts of this case raise the reasonable inference that the defendant was intoxicated and that while intoxicated he took an automobile for the purpose of "joyriding."

The point is that the intent of the defendant was most certainly a matter in issue in this case, and the question of whether the accused intended temporarily or permanently to deprive the victim of his automobile was a matter of fact which should have been resolved by the jury upon proper instruction. I am of the opinion that the defendant, Mr. Bailey, was prejudiced by the trial court's refusal to grant the joyriding instruction and upon review, such prejudice should be presumed to have contributed to his conviction for the felony of grand larceny.

Respectfully, I assert that it is pure legal sophistry to say that an accused is not entitled to a joyriding instruction in a trial upon an indictment for larceny of an automobile on the premise that the different degree of intent required to convict for the higher crime, as opposed to the lesser crime, excludes consideration of the lesser crime as a "lesser included offense." The quality of justice would not be strained if the law should benefit from more realistic application.

NEELY, JUSTICE, *concurring in part and dissenting in part:*

I concur with the result in this case but dissent to the logic. Under the evidence presented an instruction on joyriding was not warranted; however, under some circumstances joyriding as a lesser included offense would be a permissible verdict under an indictment for grand larceny of an automobile. Otherwise the State must elect between the two offenses when seeking an indictment, and evidence of joyriding would be an absolute defense to grand larceny while, ridiculously enough, grand larceny would be an absolute defense to joyriding.