358 S.E.2d 212

**STATE of West Virginia**

v.

**Charles HOBBS.**

**No. 17187.**

Supreme Court of Appeals
of West Virginia.

May 20, 1987.

Bethany Boyd, Asst. Atty. Gen., for appellant.

Linda Kay Wichman, Barboursville, Harry L. Hager, Huntington, for appellee.

PER CURIAM.

The appellant, Charles Hobbs, appeals from his conviction in the Circuit Court of Cabell County of the crime of murder of the first degree. The appellant contends that he is entitled to a new trial for the following reasons: the prosecution failed to produce evidence pursuant to court-ordered discovery; the trial court refused to give a defense instruction relating to intoxication; and the prosecuting attorney made allegedly prejudicial remarks in his closing argument. In addition, the appellant contends that the evidence was insufficient to support a finding of guilt. We find no error which would warrant reversal of the appellant's conviction, and we affirm.

At approximately 1:00 p.m. on Wednesday, November 23, 1983, the mutilated body of Anna Mae Adkins was discovered on a hillside not far from her home in Huntington, Cabell County. An autopsy revealed that Ms. Adkins had been sexually assaulted and had died as a result of multi-

ple stab wounds to the chest and neck between ten and twenty-four hours prior to the discovery of the body.

In January 1984, the appellant, Ms. Adkins' live-in companion for a number of years, was indicted for murder. The appellant was arrested, and counsel was appointed to represent him. The matter came on for trial in the Circuit Court of Cabell County on September 10, 1984 and, on September 14, 1984, the jury returned a verdict finding the appellant guilty of murder of the first degree with a recommendation of mercy.

The appellant's first contention relates to the prosecutor's failure to disclose certain evidence prior to trial. On March 19, 1984, some six months before trial, the circuit court granted the appellant's motion for discovery, requiring the State to disclose, among other things, any written or oral statements made by the appellant, copies of any reports of scientific tests or experiments germane to the case and a list of all witnesses to be called by the State at trial. In its answer, the State failed to disclose the following matters: (1) the existence and results of a polygraph test administered to the appellant; (2) the existence and results of a chemical analysis of a sample of the appellant's saliva; and (3) the existence and content of an oral statement made by the appellant to the police prior to his arrest. Neither side was allowed to introduce the results of the polygraph test into evidence,[1] and the trial court prohibited the State from introducing the oral statement into evidence against the appellant. The State was permitted to elicit expert testimony relating to the saliva analysis, but the appellant did not object to the introduction of this testimony.

The State also failed to disclose the name of a witness called to testify on the fourth day of trial. The State offered the testimony of this unexpected witness in an attempt to discredit the appellant's alibi defense. Defense counsel objected to any testimony without first having an opportunity to interview the witness. The trial court allowed the interview, and defense counsel did not thereafter interpose any objection to his testimony. On the stand, the witness did not refute the appellant's alibi, but, rather, confirmed it.

■ The rule concerning reversal of a criminal conviction for the prosecution's failure to disclose evidence pursuant to court-ordered discovery has been stated as follows:

> "When a trial court grants a pre-trial discovery motion requiring the prosecution to disclose evidence in its possession, non-disclosure by the prosecution is fatal to its case where such non-disclosure is prejudicial. The non-disclosure is prejudicial where the defense is surprised on a material issue and where the failure to make the disclosure hampers the preparation and presentation of the defendant's case." Syllabus Point 2, *State v. Grimm*, 165 W.Va. 547, 270 S.E.2d 173 (1980).

Syllabus Point 5, *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982). The same rule applies to late production of evidence. *State v. Trail*, 174 W.Va. 656, 328 S.E.2d 671 (1985). *See also State v. Ward*, 168 W.Va. 385, 284 S.E.2d 881 (1981).

■ In this case we fail to see how the State's late production of evidence resulted in any prejudice to the appellant. Neither the polygraph test nor the appellant's oral statement were introduced into evidence by either side. The appellant registered no objection to the admission of the testimony relating to the saliva analysis and, in fact, relied upon the inconclusive results of the test as evidence of his innocence.[2]

---

1.  Indeed, the results of the polygraph test were clearly inadmissible for any purpose. *See, e.g., State v. Hartshorn*, 175 W.Va. 274, 332 S.E.2d 574 (1985); *State v. Sheppard*, 172 W.Va. 656, 310 S.E.2d 173 (1983); *State v. Frazier*, 162 W.Va. 602, 252 S.E.2d 39 (1979).

2.  The saliva sample was taken for the purpose of determining whether the appellant was a "secretor", that is, one who secretes the antigens characteristic of his blood group in all of his bodily fluids. The State intended to compare the results of the saliva analysis with the results of a similar analysis of sperm found in the decedent's body. By the time the tests were conducted, however, the sperm sample had decomposed to the point that there was no semi-

The only point on which the appellant may legitimately claim surprise was the admission at trial of the testimony of the additional prosecution witness. It is clear, however, that defense counsel was afforded an opportunity to interview the witness before he testified and offered no objection thereafter to his testimony. The evidence offered by this witness was far more damaging to the prosecution's case than it was to the appellant's case. In these circumstances, we find no prejudice to the appellant resulting from the State's late disclosure of evidence which would warrant reversal of the conviction.

The appellant next contends that the trial court erred in refusing Defendant's Instruction No. 14:

The Court instructs the jury that if you believe from the evidence that the defendant, Charles Hobbs, committed the homicide as alleged in the indictment, and if the jury further believes from the evidence that the defendant, Charles Hobbs was intoxicated at the time of the homicide, to a degree as to render the defendant, Charles Hobbs, incapable of a willful, deliberate, and premeditated purpose, then the jury cannot find Charles Hobbs guilty of murder in the first degree and shall find him guilty of murder in the second degree.

The appellant asserts that the trial court's refusal to give any instruction on his theory of intoxication was reversible error.

█ We have long recognized that proof of voluntary intoxication may serve to reduce a charge of first-degree murder to second-degree murder where the level of intoxication is "such as to render the accused incapable of forming an intent to kill, or of acting with malice, premeditation or deliberation." Syllabus point 4, in part, *State v. Burdette*, 135 W.Va. 312, 63 S.E.2d 69 (1950). *See also State v. Hickman*, 175 W.Va. 709, 338 S.E.2d 188 (1985); *State v. Brant*, 162 W.Va. 762, 252 S.E.2d 901 (1979); *State v. Phillips*, 80 W.Va. 748, 93 S.E. 828 (1917).

Where there is evidence in a murder case to support the defendant's theory that his intoxication at the time of the crime was such that he was unable to formulate the requisite intent to kill, it is error for the trial court to refuse to give a proper instruction presenting such a theory when requested to do so.

Syllabus point 4, *State v. Keeton*, 166 W.Va. 77, 272 S.E.2d 817 (1980).

█ In this case it was admitted that the appellant was a chronic alcoholic. There was very little evidence, however, concerning whether the appellant was intoxicated at the time of the murder. The medical examiner estimated the time of death at between 1:00 p.m. on Tuesday, November 22, 1983 and 3:00 a.m. the next morning. Numerous witnesses testified that the appellant had been drinking or was drunk on the preceding Friday and on the following Wednesday at the time the body was found. However, only one witness testified that the appellant was drunk on Tuesday. Moreover, this witness offered no evidence to show the extent of the appellant's drinking or its effect on his ability to form intent and later contradicted his own testimony, stating that he had been referring to another day on which the appellant was drunk. Outside of this conflicting testimony, there was no evidence that the appellant had been drinking immediately prior to the murder.

In view of the paucity of evidence indicating intoxication at the time of the murder, we cannot say that the trial court erred in refusing to instruct the jury on the appellant's theory of diminished capacity. "It is error to give instructions to the jury, even though they state correct propositions of law, when there is no evidence to support some of the hypotheses which they contain." Syllabus point 7, *State v. Morris*, 142 W.Va. 303, 95 S.E.2d 401 (1956). Accordingly, we find no reversible error in the trial court's refusal to give the offered instruction. *See State v. Bailey*, 159 W.Va. 167, 220 S.E.2d 432 (1975), *over-*

nal fluid to test. Accordingly, analysis and comparison of the sperm sample was impossi-

ble.

*ruled on other grounds, State ex rel. D.D.H. v. Dostert* 165 W.Va. 448, 269 S.E.2d 401 (1980); *State v. Vance*, 146 W.Va. 925, 124 S.E.2d 252 (1962), *overruled on other grounds, State ex rel. Grob v. Blair*, 158 W.Va. 647, 214 S.E.2d 330 (1975).

The appellant also contends that the trial court erred in overruling defense counsel's objection to a portion of the prosecuting attorney's closing argument which commented on the appellant's failure to call a witness to rebut the testimony of a prosecution witness. These remarks apparently were made in response to defense counsel's assertion in his closing argument that the State's witness was lying.[3]

■ The well-settled rule in this regard is that "[a] judgment of conviction will not be reversed because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." Syllabus point 5, *State v. Ocheltree*, 170 W.Va. 68, 289 S.E.2d 742 (1982). Although the prosecuting attorney's remarks in this case may have been improper, we do not believe that they were sufficient, in and of themselves, warrant reversal of the conviction. The comment was an isolated one and, when viewed in the context of the entire trial, including the arguments of defense counsel, was not clearly prejudicial to the appellant. *See State v. Brewster*, 164 W.Va. 173, 261 S.E.2d 77 (1979). *See also State v. Sparks*, 171 W.Va. 320, 298 S.E.2d 857 (1982).

The appellant's final assignment of error is that there was insufficient evidence to warrant his conviction. The appellant relies primarily on the fact that there was no physical evidence directly linking him to the murder and that other witnesses had provided him with an alibi.

■ The standard for reviewing the sufficiency of the evidence in a criminal trial has been stated as follows:

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of the evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

Syllabus point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978). " 'If, on a trial for murder, the evidence is wholly circumstantial, but as to time, place, motive, means and conduct, it concurs in pointing to the accused as the perpetrator of the crime, he may properly be convicted.' Syllabus point 1, *State v. Bailey*, 151 W.Va. 796, 155 S.E.2d 850 (1967)." Syllabus point 3, *State v. Meadows*, 172 W.Va. 247, 304 S.E.2d 831 (1983).

■ Viewing the evidence in this case in the light most favorable to the State, we find that it satisfies these requirements. The appellant and the decedent had lived together as husband and wife for approximately seven years, during which time there had been numerous episodes of domestic violence. Several days before the murder, the decedent had left the appellant. The appellant at that time accused the decedent of infidelity and told several witnesses that he had "something right here that will take care of" her. On Sunday, November 20, 1983, neighbors overheard the appellant threaten to kill the decedent during an argument.

The decedent's body was found near the home shared by the appellant and the decedent. The appellant supposedly spent the entire night of Tuesday, November 22, 1983, sleeping on the couch at the nearby home of his brother. The testimony mere-

---

**3.** The prosecuting attorney stated:
If the old man, and I'm saying that in respect to him, was lying, the last witness was lying, why didn't the defendant call Lonnie Forth up here to say he's lying. I wasn't

there. [B]ecause this [witness] said Lonnie Forth and David Hobbs was there and Lonnie Forth was sitting in the back of the courtroom and is at this very second. Why wasn't he called to this stand to say that is a lie?

ly showed, however, that the appellant was on the couch when his brother and sister-in-law went to bed at 11:00 p.m. Tuesday night and was still there when they got up at 7:00 a.m. Wednesday morning.

On Wednesday morning prior to the discovery of the body, the appellant enlisted the aid of relatives to pawn a knife and several wristwatches which had belonged to the decedent. In the course of the morning, the appellant appeared upset and was heard to state that "someone had stabbed his baby." Later that day, upon being told of the discovery of the body, but before anyone had explained the manner of death, the appellant was heard to exclaim "Oh, my God, somebody stabbed my baby!" Thereafter, the appellant admitted to various persons that he had killed Ms. Adkins.

We cannot say that this evidence was manifestly inadequate to support the conviction. On the night of the murder, the appellant was at the home of his brother, not far from the place where the body was found. The testimony did not provide the appellant with an alibi for the hours between 11:00 p.m. and 3:00 a.m. when death could have occurred. The appellant had exhibited violent tendencies towards the decedent in the past, had expressed jealously after she left him and had threatened to kill her. He was in possession of a knife and several of the decedent's belongings and exhibited knowledge of the manner of her death before the discovery of the body. He later told a number of people that he had committed the murder. This evidence, though circumstantial, was sufficient to enable the jury to render a verdict of guilty beyond a reasonable doubt.

For the foregoing reasons, we find no error which would warrant reversal of the appellant's conviction. Accordingly, we affirm the judgment of the Circuit Court of Cabell County.

Affirmed.