535 S.E.2d 484

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Michael VANCE, Defendant Below, Appellant.**

No. 27382.

Supreme Court of Appeals of West Virginia.

Submitted June 13, 2000.

Decided July 14, 2000.

Joan G. Hill, Esq., Crandall, Pyles, Haviland & Turner, Logan, West Virginia, Attorney for the Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, Leah Perry Macia, Esq., Assistant Attorney General, Charleston, West Virginia, Attorneys for the Appellee.

SCOTT, Justice:

The defendant, Michael Vance, was convicted of unlawful wounding by jury trial on November 18, 1998, in the Circuit Court of Mingo County, West Virginia. He contends the circuit court erred in failing to grant him a new trial based on grand juror disqualification and a familial relationship which exists between defense counsel at trial and the victim. We believe the circuit court committed no error.

## I.

### FACTS

The facts of this case are not in dispute. During the late evening hours of June 30, 1997, at Belle's grocery store in Lenore, West Virginia, the defendant attacked and beat James Deskins with a pool cue rendering him unconscious. The reason for the attack is not clear, but, the victim was seriously injured. He was transported by ambulance to Williamson Memorial Hospital in Williamson, West Virginia, where he was sta-

bilized. The victim was then taken by helicopter to Cabell Huntington Hospital in Huntington, West Virginia, where he underwent brain surgery. At trial, Dr. Maurice Jerome Day, Jr., who performed the surgery, testified by video deposition that the victim "had an obvious skull fracture and a couple of cuts around the right facial area." Upon closer examination, Dr. Day determined a blood clot had formed between the victim's skull and brain and he suffered from severe fractures around his eye socket and cheekbone on the right side of his head. The surgery could not save the victim's vision. He is blind in the right eye.

The defendant was arrested on July 1, 1997. After encountering difficulties in impaneling a grand jury, the defendant was finally indicted in September 1998 for malicious wounding. Michael Magann was appointed as counsel to represent the defendant. Defense counsel argued pretrial that the charge against the defendant should be dismissed because of irregularities involving grand juror Cathy Vance. The court denied the motion.

The case proceeded to trial. On the morning jury selection was to begin, Mr. Magann learned, through information regarding a threat that was made on the defendant's life, that he shares a distant adoptive familial relationship with the victim. This relationship exists through Mr. Magann's adopted grandmother. He learned that his grandmother's cousin is the victim's grandfather. Mr. Magann states that he informed the defendant of the relationship; the defendant states that Mr. Magann did not disclose the relationship prior to trial. Nonetheless, Mr. Magann represented the defendant through trial and sentencing. On November 18, 1998, the defendant was convicted of unlawful wounding and on December 14, 1998, he was sentenced to a period of not less than one nor more than five years in the West Virginia Penitentiary.

On December 29, 1998, the defendant filed a pro se motion requesting new counsel. He supported the motion by alleging his trial counsel was closely related to the victim. The circuit court held a hearing on the mo-

tion on January 11, 1999. The court entered an order the following day appointing present counsel to represent the defendant in post-trial motions. A motion for a new trial was filed assigning as errors the qualifications of the grand jury and the relationship of trial counsel to the victim. By order entered on July 21, 1999, the circuit court denied the motion. It is from this order that the defendant appeals.

On appeal, the defendant contends the circuit court erred by denying his motion for a new trial for two reasons. First, he alleges the grand jury was improperly constituted and/or a member of the grand jury should have been disqualified. He also contends he was denied a fair trial because his defense counsel at trial is related to the victim.

## II.

### STANDARD OF REVIEW

■ This Court previously held that:

"Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. pt. 4, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976).

Syl. Pt. 1, *Andrews v. Reynolds Memorial Hosp., Inc.*, 201 W.Va. 624, 499 S.E.2d 846 (1997). We have also previously held in part of syllabus point three of *In re State Public Building Asbestos Litigation*, 193 W.Va. 119, 454 S.E.2d 413 (1994), *cert. denied sub nom. W.R. Grace & Co. v. West Virginia*, 515 U.S. 1160, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995), that "[a] trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion." We later clarified the holding from *Asbestos Litigation* in *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 459 S.E.2d 374 (1995), however, the clarifying language to the holding was never specifically adopted as a holding by this Court. Accordingly, we now hold that

in reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

*Id.* at 104, 459 S.E.2d at 381.

## III.

### DISCUSSION

The defendant in this case contends the indictment against him must be dismissed because one of the grand jurors stated that she knew the victim. This contention is based on the following dialogue which took place during grand jury proceedings between the prosecuting attorney and grand juror Cathy Vance:

MR. SMITH: Does anyone else know these folks?

JUROR CATHY VANCE: I know James Deskins, but I wasn't there or anything like that but I do know him.

MR. SMITH: Okay; What's your name, ma'am?

JUROR CATHY VANCE: Cathy Vance.

MR. SMITH: Ms. Vance, your knowledge of James Deskins, who is the victim in this presentation, would that make you biased one way for or against the State in it's [sic] presentation?

JUROR CATHY VANCE: That, I don't know; Honestly, I may need to—

MR. SMITH: —Okay; Whatever you say—

GRAND JURY FOREMAN: You need to have 15 in here.

MR. SMITH: The same thing happened the last time.

JUROR CATHY VANCE: I know him, but, like I say, I wasn't there.

MR. SMITH: Let's just clarify it for the record; Ms. Vance, you stated you feel a little uncomfortable. Could you give your reasoning?

JUROR CATHY VANCE: I'm just uncomfortable. It's not that I would be against him or whatever—I'm not. I don't think I would do it just because I know him, but I'm just saying I do know him and that's all.

MR. SMITH: Do you have any knowledge regarding this incident between him and Michael Vance? Have you heard anything about what happened?

JUROR CATHY VANCE: Just hearsay or whatever—in the paper, whatever;

MR. SMITH: Let's take a short recess.

(Recess)

MR. SMITH: All right. We're back on the record in State of West Virginia versus Michael Vance.

Ms. Vance, could you state your full name?

JUROR CATHY VANCE: Cathy Vance.

MR. SMITH: I believe you made some disclosures on the record that you know the victim in this case, James Deskins, and you've heard some rumors about the allegations that took place here?

JUROR CATHY VANCE: Yes.

MR. SMITH: I thank you for those disclosures, and I need to ask you a question. Despite your knowledge of the victim and despite your knowledge of some rumors and circumstances that surrounded this incident, can you set that aside and make a decision here today—a fair and just decision—just solely on the evidence presented here in this presentation?

JUROR CATHY VANCE: Yes.

MR. SMITH: And you will make that decision without any prejudice or bias, solely on the evidence here today?

JUROR CATHY VANCE: Yes.

■ A similar issue was addressed in *State v. Garrett*, 195 W.Va. 630, 466 S.E.2d 481 (1995). The defendant in *Garrett* was convicted of first degree murder without a recommendation of mercy. On appeal, he requested that the indictment be dismissed because a member of the grand jury was a witness at trial. *Id.* at 644, 466 S.E.2d at 495. This Court chose not to reach the issue of whether the grand juror was, in fact, disqualified by espousing the following reasoning:

> This Court has previously stated that "[t]he grand jury is an accusatory body, not a judicial body, and as such has the right and obligation to act on its own information, however acquired. *W.Va.Code*, 52-2-8. Its oath infers that it may be called upon to act in the case of enemies and friends. *W.Va.Code*, 52-2-5. 38 Am. Jur.2d *Grand Jury*, § 7, pp. 951-952." *State v. Bailey*, 159 W.Va. 167, 173, 220 S.E.2d 432, 436 (1975). Moreover, "[u]nder the provisions of *W.Va.Code*, 52-2-12, an indictment will not be quashed or abated on the ground that one member of the grand jury is disqualified." Syl. pt. 4, *Bailey, supra.* "The curative provisions of this statute are based on reason and sound public policy. It would be detrimental to the public interest, if a large number of indictments should be liable to be quashed or abated because one grand juror was disqualified." *Id.* at 174, 220 S.E.2d at 436. (citations omitted). Accordingly, it is not necessary that we address whether Mrs. Nichols was, in fact, disqualified from serving on the grand jury which indicted the appellant, as such disqualification, if any, would not quash the indictment. Thus, it was not error for the trial court to deny appellant's motion to dismiss the indictment.

195 W.Va. at 644, 466 S.E.2d at 495 (footnote omitted). This reasoning applies in the case *sub judice.*[1]

■ We also note that "[m]embers of the grand jury are not necessarily biased ...

---

**1.** We find further support for this conclusion in W.Va.Code § 52-2-8 (1994), which provides:

> At least twelve of the grand jurors must concur in finding or making an indictment or presentment. They may make a presentment or find an indictment *upon the information of two or more of their own body*, and when a presentment or indictment is so made, or on the testimony of witnesses called on by the grand jury, or sent to it by the court, the names of the grand jurors giving the information, or of the witnesses, shall be written at the foot of the presentment or indictment.

*Id.* (emphasis added).

by personal acquaintance with the victim, defendant, or witnesses. . . . [However], [t]he jurors may be asked to affirm that they can evaluate the case in an unbiased fashion and act impartially." 38 Am.Jur.2d *Grand Jury* § 5 (1999). That is exactly what occurred in the case at bar. Upon being questioned, the grand juror, Ms. Vance stated that she knew the victim, but that she could and would base her decision solely on the evidence that was presented. The trial court, nonetheless, went a step further to ensure that Ms. Vance was qualified. The court conducted an in camera interview and determined the grand juror was properly qualified in that she exhibited no bias or prejudice and that no relationship existed between Ms. Vance and the defendant or the victim. Based upon our review of the record, we cannot say the circuit court clearly erred in reaching this decision. Even if Ms. Vance should have been disqualified, the curative provisions of West Virginia Code § 52–2–12 (1994)[2] saves the indictment.

West Virginia Rule of Criminal Procedure 6(b)(2) supports this decision. The rule reads as follows:

> (2) Motion to dismiss.—A motion to dismiss the indictment may be based on objections to the array or on the lack of legal qualifications of an individual juror, if not previously determined upon challenge. An indictment shall not be dismissed on the ground that one or more members of the grand jury were not legally qualified if it appears from the record kept pursuant to subdivision (c) of this rule that 12 or more jurors, after deducting the number not legally qualified, concurred in finding the indictment.

*Id.* In the instant case, fifteen grand jurors were impaneled and returned the indictment against the defendant. Even if one juror was disqualified, twelve or more jurors concurred in finding the indictment. It was, therefore, not error for the circuit court to deny the motion to quash the indictment or to deny the motion to grant a new trial on that ground.

The defendant also contends that the circuit court erred by denying the motion for a new trial due to the familial relationship of trial counsel to the victim. He believes this is an "extremely rare case" where this Court should find ineffective assistance of counsel on direct appeal due to the conflict of interest held by trial counsel. *See* Syl. Pt. 10, in part, *State v. Triplett,* 187 W.Va. 760, 421 S.E.2d 511 (1992) ("It is the extremely rare case when this Court will find ineffective assistance of counsel when such a charge is raised as an assignment of error on a direct appeal.")[3] He also contends the relationship was not disclosed prior to trial. Mr. Magann states that he revealed the familial relationship to the defendant immediately upon becoming aware of it.

The record reveals that the circuit court held a post-trial hearing on January 11, 1999. During that hearing, the defendant's father asked Mr. Magann if he was related to the victim or any other party involved in the case. Mr. Magann testified that he "did not even know he was of relation to the victim until two days before trial." Mr. Magann then asked permission to withdraw as counsel. The court agreed that new counsel should be appointed to represent the defendant. In view of that finding, the court delayed discussing and ruling on the issue until substitute counsel could be appointed. Present counsel was subsequently appointed to represent the defendant in post-trial motions and on appeal.

In the amended affidavit he later submitted to the court, Mr. Magann explains the situation as follows:

> 7. I informed Ermal Vance and Michael Vance, who was also present during this conversation, that, Mr. Marcum was the first cousin of my paternal grandmother, Eulalia Francisco Magann, who was born in 1915.

---

**2.** West Virginia Code § 52–2–12 (1994) provides: "No presentment or indictment shall be quashed or abated on account of the incompetency or disqualification of any one or more of the grand jurors who found the same." *Id.*

**3.** The *Triplett* case involved complaints about defense counsel's strategy and performance during the defendant's murder trial.

8. I also asked Ermal Vance if he knew how Virgil Marcum was related to James Deskins and Mr. Vance informed me that Mr. Marcum was the maternal grandfather of James Deskins.

9. Although I did advise Michael Vance and Ermal Vance of my relationship with Virgil Marcum, I did not advise Michael Vance that this may present a conflict of interest, because I did not believe that my representation of Michael Vance would be compromised by the relationship. I also did not advise Michael Vance that he would have the opportunity to request substitute counsel, if he felt that a conflict existed.

10. After I was informed by Ermal Vance of the threat made by Virgil Marcum, I responded to both Ermal Vance and Michael Vance that I would report this threat to Judge Thornsbury. On the morning of the trial, which was the next opportunity that I had to inform Judge Thornsbury of the threat in the presence of Assistant Prosecutor Greg Smith, I informed the Judge of the threat and requested additional security in the courtroom. Judge Thornsbury responded by providing additional security, which included equipping Bailiff Kevin Wilson with a metal detecting device.

The circuit court held a hearing on this issue on May 20, 1999, wherein Mr. Magann testified at the defendant's request. He testified that while he was talking to Ermal Vance on the morning the jury was impaneled, November 17, 1998, he "indicated that [he] was of a distant relationship to Virgil Marcum[.]" He also testified he did not know that James Deskins and Virgil Marcum were related until that morning.

On April 12, 1999, the court held a hearing on the defendant's motion for a new trial. At that hearing, present defense counsel characterized the situation in the following manner:

I guess that makes [Mr. Magann and the victim] about sixth—somewhere along—distant cousins, but despite the fact of how many times removed, or whatever, there is an issue of this relationship, and this relationship did not come to Mr. Magann's attention, as he stated in this hearing on January 11th, until two days before trial, but it was before trial, Your Honor, and this matter was never discussed with Mr. Vance to any extent that would allow him to consent to the potential conflict and obvious relationship, however distant the court wants to characterize it. Mr. Magann did not advise his client of the relationship.

However, later in the hearing when asked by the prosecutor if Mr. Magann had told Ermal Vance about the relationship, counsel answered, "According to Mr. Magann, they discussed it and it was kind of like they laughed it off."

After considering the evidence, the court found in its final order, inter alia: that no blood relationship existed between Mr. Magann and Virgil Marcum, because Mr. Magann's grandmother was adopted; that neither the defendant nor his father raised the issue or expressed any concern about the issue until nearly two months after the jury trial concluded; that there was no evidence a conflict of interest existed at the time of trial, because Mr. Magann did not know the victim was a fifth or sixth cousin by adoption until the alleged threat was revealed by the defendant and his father; and that no evidence was presented to show that Mr. Magann ever knew the victim. The court also found that no evidence was presented to show that Mr. Magann failed to fully and completely defend the defendant or that the defendant was prejudiced in any way. The court finally concluded that:

Mr. Magann testified that he informed the Defendant of the relationship immediately upon receiving information pertaining to the same. Furthermore, notwithstanding the conflicting testimony concerning whether Mr. Magann informed the Defendant of the distant familial [relationship] to Virgil Marcum, the testimony offered by the Defendant tends to be consistent with Mr. Magann's testimony concerning the series of events leading to Mr. Magann's revelation about his relationship to Virgil Marcum and the Court finds such evidence to be credible.

6. Moreover, the Defendant failed to introduce any credible evidence of ineffective

assistance of counsel. The record in this matter demonstrates that Mr. Magann was extremely diligent in his defense of the Defendant. He interviewed witnesses, investigated the facts, filed appropriate motions, made timely objections and otherwise zealously defended the Defendant within the bounds of the law.

■ We cannot say the circuit court erred. The defendant argues that under *State v. Reedy*, 177 W.Va. 406, 352 S.E.2d 158 (1986), he is entitled to a new trial; however, the facts of *Reedy* are distinguishable. *Reedy* involved two appeals. The defendant was convicted first for daytime burglary. He was subsequently convicted as a recidivist and sentenced to life in prison. In *Reedy*, the State did not deny that the defendant's appointed trial counsel was both a friend and a relative of the burglary victim. The victim was the prosecuting witness in the defendant's first trial. The relationship was not revealed prior to trial. On appeal, the defendant contended he was denied effective assistance of counsel because of the relationship and friendship of his trial counsel with the burglary victim. This Court agreed "with the appellant that the potential conflict of interest in the family relationship, together with the lack of timely disclosure to the appellant, constituted a violation of the appellant's right to effective assistance of counsel." *Id.* at 409, 352 S.E.2d at 161–62.

■ In so finding, the Court reasoned that "[t]he significant inquiry in the instant case is not whether actual conflict occurred because of the family relationship, but whether the potential for conflict was revealed to the defendant in a timely manner." *Id.* at 411, 352 S.E.2d at 163. The *Reedy* facts which emphasized the possibility of conflict are simply not the facts in the case at bar. Mr. Magann and the victim were not friends; in fact, prior to trial, they did not know each other. Also, sufficient evidence was introduced upon which the trial court could properly conclude that the relationship was disclosed at the earliest opportunity, that being prior to trial. No objection was made. The *Reedy* court held:

> The existence of a family relationship between a defense counsel and the crime victim must be disclosed to the accused at the earliest opportunity, so that the accused can make an intelligent decision whether to waive his right to assistance of counsel free from potential conflict, or to demand or retain different counsel.

*Id.* at 408, 352 S.E.2d at 160, Syl. Pt. 3. In accordance with this rule, we further hold that a familial relationship more distant than the third degree of relationship shared by defense counsel and the victim of a crime is insufficient to present a conflict of interest so as to disqualify defense counsel from representing the accused.[4] After thoroughly reviewing the record, we do not believe the circuit court erred in failing to grant a new trial on this issue.

### IV.

### CONCLUSION

Based on the foregoing, the judgment of the Circuit Court of Mingo County is affirmed.

Affirmed.

Chief Justice MAYNARD, deeming himself disqualified, did not participate in the decision of the Court.

---

4. We also note that pursuant to Canon 3E(1)(d) of the Code of Judicial Conduct, a judge is not disqualified from a case due to familial relationship unless he or she is "within the third degree of relationship" to a party involved in the proceeding. *Id.*