# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 15-0745** (McDowell County 14-F-229)

**Jacqueline Hairston,**
**Defendant Below, Petitioner**

**FILED**

**September 6, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Jacqueline Hairston, by counsel James J. Palmer III, appeals the Circuit Court of McDowell County's June 30, 2015, order sentencing her to a cumulative prison term of four to twenty-five years following her conviction for solicitation to commit kidnaping and retaliation against a witness. The State, by counsel Zachary Aaron Viglianco, filed a response and a supplemental appendix. Petitioner filed a reply. On appeal, petitioner argues that the State's evidence was insufficient to support the jury's guilty verdict on both counts.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]Although petitioner lists two assignments of error at the outset of her brief (error in denying her motion to dismiss and error in denying her motion for judgment of acquittal), she presents only a single discussion of the sufficiency of the evidence in the body of her argument. Therefore, we address only that issue in this memorandum decision.

Further, we need not address one of petitioner's arguments related to the sufficiency of the evidence. In her brief to this Court, petitioner argues that the State failed to prove that she intended "to marry or defile" the victim or to cause the victim to be married or defiled, as required to establish kidnaping under West Virginia Code § 61-2-14(a). However, as the State noted in its response, petitioner was not convicted of violating West Virginia Code § 61-2-14(a); she was convicted of violating West Virginia Code § 61-2-14a—a kidnaping provision that does not contain the element of an intent to marry or defile. Petitioner acknowledged this fatal flaw in her reply brief. The record is clear that petitioner was indicted, tried, and convicted under West Virginia Code § 61-2-14a and that the circuit court instructed the jury on the elements of kidnaping under that provision.

1

In October of 2014, petitioner was indicted on three felony counts: (1) Solicitation to commit murder, in violation of West Virginia Code §§ 61-11-8a and 61-2-1; (2) Solicitation to commit kidnaping, in violation of West Virginia Code §§ 61-11-8a and 61-2-14a; and (3) Retaliation against a witness, in violation of West Virginia Code § 61-5-27. These crimes were alleged to have occurred in June of 2014.

In March of 2015, petitioner's jury trial commenced. At trial, the jury heard from several witnesses, including Darrell Elmer Brewster and petitioner. Mr. Brewster, who is petitioner's first cousin, testified that petitioner solicited him to kill a witness in exchange for money.[2] The targeted witness was allegedly preparing to testify against petitioner's husband in a separate legal action. According to Mr. Brewster, petitioner said to him (referring to the targeted witness), "I want the little bitch killed. I want her out of the picture." Mr. Brewster explained that "the moral of doing away with [the targeted witness] was to keep her from appearing in court against [petitioner's husband]." Mr. Brewster further testified that he immediately contacted the police following his conversation with petitioner, and the police arranged a sting operation wherein they would record Mr. Brewster's telephone conversations with petitioner.[3] Mr. Brewster also admitted in his testimony that he had a lengthy criminal history and a bad reputation in his community.

During the State's case-in-chief, the jury also heard two notable recordings made by the police: (1) A recording of a telephone conversation between Mr. Brewster and petitioner in which petitioner said it was a "deal" to pay Mr. Brewster to make the targeted witness, in his words, "one dead cat"; and (2) A recording of petitioner's statement to police in which she denied hiring Mr. Brewster to kill the targeted witness but stated that she only agreed that "he was supposed to take [the witness] out of state."[4]

In her testimony, petitioner admitted that she made a deal with Mr. Brewster over the telephone to take the targeted witness out of state, but petitioner maintained that she made that deal only to stop Mr. Brewster from continually harassing her. Petitioner claimed that Mr. Brewster contacted her repeatedly for money and that she finally agreed to his plan to get him to

---

[2]The amount of money to be paid by petitioner to Mr. Brewster is unclear from the record on appeal. At trial, witnesses and attorneys referred to this amount at various times as $1,000, $1,500, and $5,000.

[3]In addition to recording certain telephone conversations, the police also contacted the targeted witness, moved her into a hotel to secure her safety, and took staged photographs of her death. According to the testimony at trial, the police intended for Mr. Brewster to show the staged photographs to petitioner to prompt her to pay him and complete the solicitation. However, a meeting between Mr. Brewster and petitioner could not immediately be arranged, and the police decided to arrest petitioner on the evidence in their possession at that time. The police showed her the staged photographs during their subsequent interrogation for the purpose of assessing her reaction to them.

[4]These recordings contained auditory feedback that made portions thereof inaudible. It appears that the parties disagreed about several of the statements made during the inaudible portions of these recordings.

stop that harassment. She further argued that, having known Mr. Brewster all of her life, she knew that he would never actually attempt such a plan or harm anyone because she characterized him as merely a "conman" seeking money.

On the second day of trial, due to a jurors' illness, the circuit court continued the case until that juror could return. When the trial reconvened, the parties presented closing arguments and the circuit court gave the jury its instructions. The jury ultimately returned a verdict of not guilty as to count one and guilty as to counts two (solicitation to commit kidnaping) and three (retaliation against a witness).

Following the jury's verdict, petitioner filed a motion for judgment of acquittal or, in the alternative, a motion for a new trial on the grounds that the State's evidence was incredible and insufficient. In her motion, petitioner relied heavily on the claim that the State's main witness, Mr. Brewster, lacked credibility and that, contrary to his testimony, petitioner denied the allegations. The circuit court denied petitioner's motion for judgment of acquittal or a new trial and scheduled a sentencing hearing.

In June of 2015, following the sentencing hearing, the circuit court entered an order denying petitioner's motion for probation and sentenced her to three to fifteen years in prison for solicitation of kidnaping and one to ten years in prison for retaliation against a witness to be served consecutively. This appeal followed.

We review a circuit court's findings and rulings as follows:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000). With regard to the sufficiency of the evidence to support a conviction, we have explained that

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt . . . .

3

Syl. Pt. 3, in part, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). Based on our review of the record on appeal, the parties' arguments, and pertinent legal authority, we find that the evidence was sufficient to support petitioner's convictions on both counts.

In this appeal, petitioner argues that the State failed to establish the statutory elements of solicitation to commit kidnaping and retaliation against a witness. Specifically, petitioner claims that the evidence failed to establish kidnaping under West Virginia Code § 61-2-14a (she does not challenge the solicitation portion of that count) and failed to establish that she retaliated against the targeted witness. West Virginia Code § 61-2-14a provides the following:

> Any person who unlawfully restrains another person with the intent:
>
> > (1) To hold another person for ransom, reward, or concession;
> >
> > (2) To transport another person with the intent to inflict bodily injury or to terrorize the victim or another person; or
> >
> > (3) To use another person as a shield or hostage, shall be guilty of a felony . . . .

While petitioner states that the evidence "may have implied" that she solicited Mr. Brewster to murder the targeted witness, she argues that no evidence demonstrated her intent to kidnap the witness. We disagree. Petitioner's argument wholly ignores her own statement to police and her own trial testimony, both of which were evidence presented to the jury in which she admitted that she made a "deal" with Mr. Brewster "to take [the witness] out of state." Contrary to her claims, petitioner's denial of an actual intent to commit a crime (despite her admission that she overtly agreed to hire Mr. Brewster to kidnap the witness) does not absolve her of criminal liability. Additionally, the jury heard substantial evidence from Mr. Brewster and petitioner's own statements that there was an intent to inflict bodily injury on the targeted witness during the process of her removal. Mr. Brewster testified that petitioner "want[ed] the little bitch killed[,]" and petitioner agreed that Mr. Brewster would make her "one dead cat[.]" Given petitioner's agreement to hire Mr. Brewster to kidnap the targeted witness and the overwhelming evidence of the intent to inflict bodily injury against the witness during her removal, we find that the jury's verdict is supported by the evidence.

Petitioner next argues that her conviction for retaliation against a witness under West Virginia Code § 61-5-27(c) is without evidentiary support because her actions were not retaliatory. We disagree. West Virginia Code § 61-5-27(c) provides that

> It is unlawful for a person to cause injury or loss to person or property, or to threaten to do so where such threat is directed at inciting or producing imminent lawless action of a violent nature that could cause bodily harm and is likely to incite or produce such action or to attempt to do so, with the intent to:
>
> > . . . .

4

(3) Retaliate against any other person for attending, testifying or participating in an official proceeding, or for the production of any record, document or other object produced by a person in an official proceeding.

In this case, the record reveals that Mr. Brewster testified that "the moral of doing away with [the targeted witness] was to keep her from appearing in court against [petitioner's husband]." As noted above, petitioner made statements and agreed to statements made by Mr. Brewster related to removing the witness from the state and/or harming her. It is clear that the evidence supports the jury's finding that petitioner threatened to cause the witness injury or loss, or attempted to do so, with the intent to retaliate against that witness for participating in an official proceeding. Viewed in the light most favorable to the State, we find that the evidence presented at trial supports petitioner's convictions for solicitation to commit kidnaping and retaliation against a witness.

For the foregoing reasons, the circuit court's June 30, 2015, order is hereby affirmed.

Affirmed.

**ISSUED**: September 6, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II