# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Mervin Roderick,**
**Defendant Below, Petitioner**

**vs) No. 18-0334** (Jefferson County 06-C-368)

**Marlyn Keesecker, Bettina Truitt, and Lorelei Freshman,**
**Plaintiffs Below, Respondents.**

**FILED**

**April 15, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mervin Roderick, by counsel Richard G. Gay, appeals the March 15, 2018, order of the Circuit Court of Jefferson County, West Virginia, that adopted the final report of the Special Receiver following the liquidation of assets of Avon Hills Farm, Incorporated. Respondents Marlyn Keesecker, Bettina Truitt, and Lorelei Freshman, by counsel Christopher C. Luttrell and Kathy M. Santa Barbara, filed a response, to which petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

This matter is an appeal from the Circuit Court of Jefferson County's March 14, 2018, order ratifying, confirming, approving, and adopting the Special Commissioner's final report from the dissolution of Avon Hill Farms, Inc. ("Avon"). Prior to the dissolution of Avon, respondents each owned a 9.52% interest in Avon and petitioner owned a 71.44% interest. The underlying facts leading to the dissolution of the corporation were outlined by this Court, in *Avon Hill Farms, Inc., v. Keesecker*, No. 13-0977, 2014 WL 2682036 (W.Va. June 13, 2014) (memorandum decision). According to *Avon Hill Farms*,

> [a]t all times relevant, Avon was an on-going entity with its primary assets in real property in Jefferson County, West Virginia. In addition to being the majority stockholder, [petitioner] was the president of Avon and was responsible for the handling of the business operations. It is undisputed that he owed a fiduciary responsibility to respondents, the minority shareholders.
>
> In 2005, it was discovered by respondents that Avon property had been sold by Roderick for an amount in excess of $3,000,000.00, which triggered tax consequences to the minority shareholders. On October 25, 2005, Keesecker and

1

Truitt filed an application for order of inspection in the Circuit Court of Jefferson County, pursuant to West Virginia Code §§ 31D–16–1601 through 31D–16–1620 of the West Virginia Business Corporation Act. Respondent Freshman intervened in the action in April 2006. Respondents requested the production of corporate records for inspection. Roderick failed to respond and judgment was entered against them.

2014 WL 2682036, at *1. Based upon a review of the records, respondents filed a civil action against petitioner alleging fraud, conversion, and breach of fiduciary duty. Respondents also sought dissolution of Avon and the appointment of a special receiver to assist in the winding up of the business affairs, pursuant to West Virginia Code § 31D-14-1432. Petitioner failed to respond, or otherwise appear, and the circuit court entered default judgment in favor of respondents on July 5, 2007. The circuit court appointed a special receiver to conduct a full accounting of Avon's activities for the preceding five years and to make recommendations regarding damages. The circuit court also awarded damages and attorney's fees in amounts to be determined. According to *Avon Hill Farms*,

> [e]vidence presented by the Special receiver and the accountants substantiated the allegations in the complaint: that in 2004, with no prior notice to the minority shareholders, Roderick sold a significant piece of Avon property for over $3,000,000.00; that he used the profit from the sale to finance his personal lifestyle; that, according to the accountants, he made more than $500,000.00 in inappropriate unauthorized "distributions" of assets to himself between 2003 and 2007; and that $139,000.00 was "loaned" to or misappropriated by Roderick acquaintances. Additionally, Roderick used corporate assets to purchase vacation property and failed to insure Avon's Jefferson County farm house (where he lived), which subsequently burned to the ground.
>
> By order entered December 30, 2008, the circuit court concluded that none of the foregoing transactions "were authorized, agreed to, or were otherwise in the best interests of Avon or the minority shareholders[;]" that "Roderick used the Avon assets as his own to the great detriment of the minority shareholders [;]" and that "Roderick's fraud and conversion [were] carried out in a willful, wanton[,] and reckless manner which also breached his fiduciary obligations to the minority shareholders and constitute[d] an improper conversion of property." The circuit court determined that respondents were entitled to damages, including attorney's fees, pursuant to West Virginia Code § 31D–16–1604.

The circuit court further found as follows:

> [T]he fraud perpetrated upon the minority shareholders of Avon significantly devalued those shares as said value is determined by the value of the corporate assets in this closely held corporation. The damages awarded in accordance with this order are intended to compensate for the damage to the minority shareholders' share value by permitting the Special Receiver to sell assets to pay the

2

damages awarded herein over the time necessary to obtain the maximum value for the minority shareholders. The court also notes the fraud occurred at a time in the real estate market when property was at its highest value, and that that value may never again be regained by the minority shareholders as the vast majority of the corporate value is in its real property. Hence, Mr. Roderick perpetrated his fraud at a time when he could gain the most from his improper activity, and the minority shareholders would be damaged the most. The court recognizes that the damages awarded may not return the full value to the minority shareholders of the damages caused by this fraud.

Accordingly, the Court Orders as follows:

A. Special Receiver John K. Dorsey is to continue as Special Receiver pursuant to *W. Va. Code,* § 31D–14–1432(c)(l). In that capacity, Mr. Dorsey is at all times to take that action he deems necessary to maximize remaining Avon assets for the benefit of its shareholders. Mr. Dorsey is to make distributions to the shareholders, Keesecker, Truitt, Freshman, and Roderick in 25% equal shares, as assets are liquidated. . . . The Court notes that the Plaintiffs mutually agree that Avon's real property should not be sold immediately, and the Court concurs, but it is in the Special Receiver's discretion on when would be the right time to sell the real property, and in what manner to do so to maximize the benefits to the shareholders. . . .

. . . .

C. Plaintiffs' Attorney's fees shall be paid by the special receiver as part of the initial distribution from Roderick's share of distribution as the court has found the requested fees to be reasonable and appropriate, that it was due to Roderick's conduct which caused the fees to be incurred and that Plaintiffs' fees and costs are specifically allowable by statute.

. . . .

F. The Court's finding of damages attempts to compensate the minority shareholders for their loss of share value, and to make the Plaintiffs whole. However, it should be noted that the court finds Roderick's conduct, as established by the uncontested evidence, more than sufficient to justify compensatory and punitive damages in excess of those awarded here.

. . . .

3

On May 15, 2013, respondents filed a motion requesting that the circuit court allow the sale of 179.5 acres of Avon's property known as the Daily Farm. On May 30, 2013, Roderick filed a motion opposing the sale of the property. By order entered July 3, 2013, the circuit court granted respondents' motion to approve the sale of the farm, finding, inter alia, that respondents "seek[ ] to have the Farm sold so that distributions can be made to shareholders and taxes can be paid[;]" and further, that the "[s]ale . . . is consistent with the prior Orders of this Court regarding the work of the Special Receiver and is in the interest of the shareholders." The circuit court thus ordered that the Special Receiver is "(1) to take such actions as necessary to market and sell the Daily Farm, and (2) to deposit the monies obtained from such sale in an appropriate escrow account at his discretion for future distribution."

2014 WL 2682036, at *2-3. Petitioner filed a Rule 60(b) motion seeking relief from the December 30, 2008,[1] order that established the process for the liquidation of Avon's assets, but the circuit court denied that motion by order entered September 16, 2009. Petitioner never appealed the denial of his 60(b) motion and, therefore, never appealed the December of 2008 order. In *Avon Hill Farms*, petitioner contested the sale of the Daily Farm, a substantial asset of Avon. This Court affirmed the circuit court order's approval of the sale of the property. *Id.* From 2008 until 2017, the Special Receiver liquidated the remaining assets of Avon. During this process, the Special Receiver provided the shareholders with annual reports that detailed principal receipts, income receipts, and disbursements. The Special Receiver also provided tax returns for Avon that included K-1 forms for each of the shareholders.

Following the sale of the final tract of Avon real estate, the Special Receiver submitted his Special Receiver's final report ("final report") to the shareholders and the circuit court on October 29, 2017. The final report stated that total gross receipts received during the dissolution process totaled $5,514,269.29. Total disbursements, including real estate taxes and service expenses, totaled $705,488.74. As a result, the gross distribution to the four shareholders was $4,808,780.55. As the December 30, 2018, order reduced petitioner's ownership, and adjusted the ownership of Avon to a 25% division of ownership between the four shareholders, the gross distribution due each shareholder was $1,202,195.14. Because the Special Receiver made interim distributions throughout the liquidation process, gross distributions were offset for each shareholder, and the Special Receiver provided an accounting for those distributions. According to this accounting, Respondent Freshman was to receive a final cash distribution of $845,757.05; Respondent Keesecker, a distribution of $845,754.04; and Respondent Truitt a final cash distribution of $845,756.95. Petitioner's final cash distribution was zero.[2] The final report revealed that once

---

[1] The order was entered in the Circuit Court of Jefferson County on December 30, 2008. *Avon Hill Farms* mistakenly references a December 23, 2008, order which appears to be the date a hearing was held to determine damages and not the date of the entry of the order.

[2] According to the final accounting for the period ending September 30, 2017, petitioner's $1,202,195.14 share of the gross proceeds was reduced by (1) redemption in the amount of $10,000; (2) Marina Shores-Boat Dock Fees in the amount of $3,163.43; (3) distributions for

attorney's fees were paid on behalf of petitioner from Avon funds and prior distributions of Avon assets to petitioner were taken into account, the total deductions attributable to petitioner exceeded petitioner's share by $183,713.52. As a result, the Special Receiver requested that a judgment be entered against petitioner for this amount, and a vendor's lien attach to equipment purchased for petitioner by Avon.

Petitioner objected to the final report, and argued that the damages assessed in the December 30, 2008, order were punitive, unfair, and should be re-adjusted. Specifically, petitioner argued that because the exact damage amounts were unknown at the time of the entry of the December 30, 2008, order, the order was improperly ambiguous and vague. Petitioner claimed that his damages should be limited to a reduction in his distributional share to 25% of net assets, offset only by attorney's fees, and loss of value of a home that burned down on Avon property. The circuit court disagreed, and by order entered March 15, 2018, found that the December 30, 2008, order was unambiguous as to its terms, and res judicata, and that the parties were bound by the terms of that order. Petitioner now appeals the March 15, 2018, order that ratified the Special Receiver's final report.

On appeal petitioner complains of the damages assessed in the Special Receiver's report, and asserts that the circuit court erred in finding that his arguments were barred by res judicata.[3] We have held that,

> [i]n reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

---

equipment in the amount of $1,919.23; (4) attorney's fees per court order in the amount of $29,490.23; (5) Virginia Beach moving expenses in the amount of $968.10, and (6) "Accounts Receivable Balance Discharged" in the amount of $1,156,654.15.

[3] Petitioner also alleged that the circuit court erred in failing to consider the tax consequences to petitioner in granting the award of the Special Receiver. Petitioner complains that he was allocated 71.44% of income during the dissolution process, and responsible for taxes on that allocation, although he was not ultimately awarded 71.44% of the gross proceeds after dissolution. Though raised as an assignment of error, petitioner fails to argue this error or adequately brief this issue in this appeal. We have held that "[a]lthough we liberally construe briefs in determining issues presented for review, issues . . . mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011). Further, "'[a] skeletal "argument," really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs.'" *Id*. Consequently, we decline to consider this assignment of error.

5

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000). With these standards in mind, we turn to petitioner's assignments of error on appeal.

Regarding the imposition of damages, petitioner argues that the circuit court made no determination that he was entitled to a credit against his damages for the reduction of his stock ownership percentage, and complains that his total damage assessment of $4,349,694.20 was punitive. We disagree. As to receiving credit against his damages for reduction of his stock ownership, the Special Receiver stated that,

> income that has partially been allocated to [petitioner] has also reduced any amounts due from him as a shareholder. So you have accounts that he owed to the corporation, so he's been getting a reduction in the accounts receivable at the rate of 71.44 percent. Could we have done 25, 25, 25? We could not have done it and maintained the S corporation election with the IRS. But likewise instead of getting 71.44 percent charged against and credited to his accounts receivable, he would have gotten 25 percent charged against it. And so, kind of like when I say the saw cuts both ways, he's getting income recognized but he's also getting the benefit that's charged against the accounts receivable for that increased percentage.

It is clear from the record that the Special Receiver considered the consequences of the change in stock ownership, and that the income attributed to petitioner served to reduce his accounts payable to the corporation. Accordingly, we find that petitioner's argument has no merit.

Further, regarding petitioner's complaint that the resulting amount of damages is punitive, we find that the December 30, 2008, order set forth the manner and methodology for the liquidation of Avon's assets, and the report of the Special Receiver simply executed the provisions of said order. As we held in *Avon Hill Farms*, "the appointed special receiver acted pursuant to his statutory authority and the authority conferred upon him by the circuit court's December [30], 2008, order." *See* W.Va. Code §§ 31D-14-1431(b) and -1432. The circuit court found that "the [s]pecial [r]eceiver's report appears to be detailed, accurate, and entirely in accord with the directives contained in the Court's order of December [30], 2008, as well as all subsequent orders." In addition, as detailed below, the record reflects that petitioner failed to appeal the December 30, 2008, order that necessitated the actions of the Special Receiver. Therefore, based on our review of the record, we find no error in the execution of the Special Receiver's report.

Petitioner argues further that the December 30, 2008, order is not a final order, because at the time of its entry, the circuit court had not yet assessed the totality of petitioner's damages. We disagree with petitioner, and concur with the circuit court's finding that petitioner's claims on appeal are barred by the doctrine of res judicata. In *Avon Hill Farms*, this Court held that,

> [t]he circuit court's September 16, 2009, order denying [petitioner]'s Rule 60(b) motion was a final, appealable order, "leav[ing] nothing to be done but to enforce by execution what has been determined." To that end, the appointed Special Receiver acted pursuant to his statutory authority and the authority conferred upon him by the circuit court's December [30], 2008 order[,] . . . and West Virginia Code § 31D–14–1432. Having failed to appeal the September 16, 2009, order, Roderick

6

may not now collaterally attack the order by creatively arguing that, in its July 3, 2013, order, the circuit court "failed to recognize" its "errors" in the December [30], 2008, underlying judgment order.

2014 WL 2682036, at *4. Therefore, based upon the record we find that petitioner failed to appeal the September 16, 2009, order denying petitioner's Rule 60(b) motion seeking relief from the December 30, 2008, order. Petitioner may not now collaterally attack the order by arguing that the damages are punitive. Consequently, we decline to reverse the decision of the circuit court.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** April 15, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison