# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No.  19-0078** (Mercer County 17-F-309-MW)

**Jesse C.,**
**Defendant Below, Petitioner**

**FILED**

**March 23, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Jesse C.,[1] by counsel Justin M. Collin, appeals his conviction for multiple sex crimes against his stepdaughter, daughter, and son, on the ground that the circuit court improperly instructed the jury. The State of West Virginia, by counsel by Mary Beth Niday, filed a response. Petitioner filed a reply.

This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion. For the reasons expressed below, the decision of the circuit court is affirmed, in part, reversed, in part, and remanded to the circuit court with instructions to order that petitioner, a convicted sex offender, register as such upon his release from prison under the Sex Offender Registration Act, West Virginia Code §§ 15-12-1 to -10.

On October 11, 2017, a grand jury handed down a twenty-seven count indictment against petitioner charging him with first-degree sexual assault; first-degree sexual abuse; sexual abuse by a parent, guardian or custodian; and incest. The alleged victims were petitioner's step-daughter M.S., his daughter M.C., and his son E.C., all of whom were under the age of twelve. Specifically, the grand jury charged petitioner with nine counts of first-degree sexual assault in violation of West Virginia Code § 61-8B-3(a)(2); three counts of first-degree sexual abuse in violation of West Virginia Code § 61-8B-7; nine counts of sexual abuse by a parent, guardian, or custodian in violation of West Virginia Code § 61-8D-5(a); and six counts of incest in violation of West Virginia Code § 61-8-12(a).[2] All of the acts were alleged to have occurred between January 1, 2009, and March 1, 2017.

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W, Va. 641, 398 S.E.2d 123 (1990).

[2] *Counts 1-9 regard petitioner's stepdaughter, M.C.*: Counts 1-3 alleged sexual assault in the first degree; Counts 4-6 alleged sexual abuse in the first degree; and Counts 7-9 alleged sexual

At petitioner's trial, the State called the following witnesses during its case-in-chief: the children's mother, F.C.; Sergeant Steven Sommers; petitioner's stepdaughter M.S. and his daughter M.C.; and Sergeant Melissa Clemons.[3]

F.C., the mother of M.S., M.C., and E.C., testified as follows: She had been romantically involved with petitioner for about thirteen years, beginning when she was fourteen years old and he was twenty-three years old. F.C. explained that M.C. and E.C. were born of the relationship. F.C. testified that, prior to her relationship with petitioner, she bore M.S., but petitioner had acted as M.S.'s father since her birth. F.C. further testified that, prior to 2017, petitioner cared for all three children while she dealt with substance abuse issues and was often away from the home. F.C. said Child Protective Services opened a case against her following complaints of child truancy, and she ultimately relinquished her parental rights. F.C. testified that her mother was given custody of all three children. F.C. said that, in 2017, M.S. told her that petitioner was "messing with" her and her siblings. In response, on June 29, 2017, F.C. recorded two phone conversations she had with petitioner during which he admitted to sexually abusing the children. She testified that she gave the recordings to Sgt. Sommers who worked for the Mercer County Sheriff's Department.

Sgt. Sommers testified as follows: He met with F.C. regarding the children's complaints of sexual abuse. At the time, petitioner was residing in another county and was living apart from the children. Sgt. Sommers also testified to petitioner's recorded statement with another officer in which petitioner admitted to having sexually abused all three children "around about 450 times[,]" and to having masturbated while he abused them. However, petitioner denied any "penetration" of the children.

M.S., petitioner's stepdaughter and the oldest victim, testified as follows: She said she was eleven years old, in the fifth grade, and living with her grandmother, her uncle, her mother, and her two siblings (M.C. and E.C.). She said that prior to living with her grandmother, she lived with her siblings, her mother, and petitioner, whom she used to call her dad. She stated that petitioner molested her by making her "put his private spots [her term for male genitalia] and put them where they wasn't supposed to be . . . [i]n my front private spot and sometimes my back." M.S. also testified that petitioner also touched her private spots with his mouth and hand "a whole lot." Finally, M.S. testified that she witnessed petitioner do "bad things" with M.C. and twice saw petitioner place his mouth on E.C.'s "front part."

M.C., petitioner's biological daughter and the other female victim in this case, testified that she was ten years old, in the fifth grade, and lived with her grandmother, her uncle, and two siblings. She testified that petitioner "stuck his private part against [her private part] and he stuck

---

abuse by a parent, guardian, or custodian. *Counts 10-18 regard petitioner's daughter, M.S.*: Counts 10-12 alleged sexual assault in the first degree; Counts 13-15 alleged incest; and Counts 16-18 alleged sexual abuse by a parent, guardian, or custodian. *Counts 19-27 regard petitioner's son, E.C.*: Counts 19-21 alleged sexual assault in the first degree; Counts 22-24 alleged incest; and Counts 25-27 alleged sexual abuse by a parent, guardian, or custodian.

[3] Petitioner's son, E.C., the youngest of the three victims and six years old at the time of trial, did not testify at trial. Instead, M.S. and M.C. testified to petitioner's abuse of E.C.

his mouth against my private part . . . a lot." She also said petitioner did these "bad things" on E.C. as well. She said petitioner first performed these acts on her when she was three years old and they continued thereafter for five years. She also testified that she eventually told her mother about petitioner's acts, but had been afraid to do so because petitioner "said he would kill [her] mom" if she told.

Sgt. Clemons, with the West Virginia State Police Crimes Against Children Unit, testified that she was present at the Child Advocacy Center in Mercer County when F.C.'s three children appeared for their forensic interviews. She said she spoke at length with petitioner by telephone regarding the alleged sexual abuse. The recording and transcript of that conversation was produced to the jury. Sgt. Clemons testified that, during that conversation, petitioner (1) admitted to sexually abusing his children and to having the children perform oral sex on him; (2) denied having penetrated the three children with his penis; but (3) admitted to touching his penis to E.C.'s penis, to putting his mouth on E.C.'s penis, to having all three children put their mouths on his penis, to having the girls touch his penis, and to touching the children with his mouth.

At the close of the State's case-in-chief, petitioner moved for a directed verdict, on all counts in the indictment, but especially on those relating to his son, E.C. The State did not object to the dismissal of four counts relating to E.C., Numbers 19, 20, 21 (alleging) first-degree sexual assault, and Number 22 (one of three counts alleging incest); thus, the circuit court dismissed those four counts.

Petitioner testified as follows during his case in chief: Late in June or early July of 2017, F.C. telephoned him because she was about to lose custody of her three children due to her drug use and the children's truancy issues. Petitioner said F.C. asked him if he had ever touched the children inappropriately, and that he replied he had never inappropriately touched any of the children. He further testified that he was molested when he was five years old. On cross-examination, petitioner testified that he told Sgt. Clemons and another officer that he needed help because he was molested when he was a child. He also testified that, when he talked to the police, he was afraid he would lose his children. He said he was nervous and did not understand his *Miranda* rights. He then claimed that he confessed to inappropriately touching his children so he could obtain help that he could not otherwise afford for himself and for the children.

The circuit court instructed the jury with regard to Counts 1, 2, and 3 (regarding M.S.) and Counts 10, 11, and 12 (regarding M.C.) that alleged petitioner committed first-degree sexual assault. Specifically, the court instructed the jury that to find petitioner guilty of those counts, the State was required to overcome the presumption of innocence, and prove beyond a reasonable doubt that,

1. The defendant, Jesse [C.],
2. between January 1, 2009 and March 1, 2017,
3. in Mercer County, West Virginia[,]
4. and being fourteen years or older,
5. engaged in sexual intercourse or sexual intrusion
6. with [either victim M.S. or M.C]
7. who was eleven (11) years of age or less, and

3

8.      that the defendant was not married to the said [victim].

The circuit court then defined "sexual intercourse" as "any act between the persons involving penetration, however slight, of the female sex organ by the male sex organ or involving contact between the sex organs of one person and the mouth or anus of another person." The court defined "sexual intrusion" as "any act between persons involving penetration, however slight, of the female sex organ or of the anus of any person by an object for the purpose of degrading or humiliating the person so penetrated or for gratifying the sexual desire of either party."

Ultimately, the jury convicted petitioner of the remaining twenty-two counts (1-18 and 23-26).

By "Amended Order" entered January 4, 2019, the circuit court denied petitioner's motions to set aside the verdict and for a new trial. The circuit court then sentenced petitioner to an indeterminate term of not less than fifteen nor more than thirty-five years for first-degree sexual assault (Counts 1-3 regarding M.S, counts 10-12 regarding M.C.); one to five years for first-degree sexual abuse (Counts 4-6 regarding M.S); ten to twenty years for sexual abuse by a parent, guardian, or custodian (Counts 7-9 regarding M.S., 16-18 regarding M.C., and 25-26 regarding E.C.); and one to five years for incest (Counts 13-15 against M.C. and 23-24 against E.C.). The circuit court ordered the sentences for first-degree sexual assault and incest to run consecutively to one another, and the sentences for first-degree sexual abuse and for sexual abuse by a parent, guardian, or custodian to run concurrently to one another. The circuit court also, without explanation, suspended the sentences for first-degree sexual abuse; sexual abuse by a parent, guardian, or custodian; and incest in Counts 13, 14, and 15 regarding M.C. Moreover, the circuit court failed to require petitioner to register as a sex offender upon his release from prison as required by the Sex Offender Registration Act, West Virginia Code §§ 15-12-1 to -10.

Petitioner now appeals.

"In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syllabus point 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

*State v. Sites*, 241 W. Va. 430, 437, 825 S.E.2d 758, 765 (2019).

Petitioner first argues that the circuit court erred by constructively amending six counts of his indictment by broadening the charges and allowing the jury to convict him of crimes not contained in the indictment. Specifically, petitioner argues that the circuit court should have instructed the jury that a conviction required a finding that the specific conduct charged in petitioner's indictment occurred, i.e., that he digitally penetrated both M.S. and M.C. put his mouth on M.S.'s sex organ, and put his penis on M.S.'s anus. Petitioner admits that his counsel did not object to the instruction and, therefore, he argues that the circuit court's error was plain. Moreover,

4

in reliance of Syllabus Point 4 of *State v. Corra*, 223 W. Va. 573, 678 S.E.2d 306 (2009), petitioner maintains that an instruction allowing a jury to convict a defendant of a crime that has not been charged against him is plain error because it adversely affected his right to notice, to due process, and to a trial on only those charges returned by the grand jury. Syllabus Point 4 of *Corra* provides,

> "An instruction which informs the jury that it can return a verdict of guilty of a crime charged in the indictment by finding that the defendant committed acts constituting a crime not charged in the indictment is reversible error." Syllabus Point 1, *State v. Blankenship*, 198 W.Va. 290, 480 S.E.2d 178 (1996).

223 W. Va. at 575, 678 S.E.2d at 308.

Petitioner also argues that the circuit court erred in failing to instruct the jury on first-degree sexual abuse, a lesser-included offense of first-degree sexual assault. However, petitioner admits that neither he nor his trial counsel asked for such an instruction. Thus, petitioner claims that the court's error was plain error. "To trigger application of the "plain error" doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d l 14 (1995). Here, we find no error, plain or otherwise.

A defendant can only be convicted of the offense for which he or she was fully and plainly charged. W. Va. Const., Art. III, § 4 ("No person shall be held to answer for treason, felony or other crime, not cognizable by a justice, unless on presentment or indictment of a grand jury."); W. Va. Const., Art. III, § 14 ("In all such trials [of crimes and misdemeanors], the accused shall be fully and plainly informed of the character and cause of the accusation."). "When the evidence at trial differs from the allegations in the indictment, then a variance has occurred. It is only when the defendant is prejudiced by the variance that a reversal is required." *Corra*, 223 W. Va. at 580, 678 S.E.2d at 313.

Petitioner's indictment notified petitioner that Counts 1, 2, 3, 10, 11, and 12 of his indictment charged him with "Sexual Assault – First Degree" under West Virginia Code § 61-8B-3(a)(2) for "unlawfully and feloniously engaging in *sexual intrusion*" of M.S. or M.C. (Emphasis added.) As noted above, petitioner's indictment also listed the specific alleged act of sexual intrusion charged for each of the six counts. Thus, petitioner was fully and plainly charged with the crimes against him. Accordingly, petitioner's constitutional rights were not violated by his indictment. At petitioner's trial, the State presented evidence tending to show that petitioner committed first-degree sexual assault by sexual intrusion, i.e., that he digitally penetrated both M.S. and M.C., put his mouth on M.S.'s sex organ, and put his penis on M.S.'s anus. Thus, the evidence at trial did not vary from the allegations in the indictment. Finally, the circuit court (1) instructed the jury regarding the elements of first-degree sexual assault pursuant to West Virginia Code § 61-8B-3(a)(2), and (2) defined "sexual intercourse" and "sexual intrusion" as provided respectively in West Virginia Code §§ 61-8B-7 and -8. These statutes were also listed in petitioner's indictment. Thus, petitioner was plainly charged with first-degree sexual assault by sexual intrusion and the jury was fully and correctly instructed on the elements of first-degree sexual assault by sexual intrusion.

Further, based upon M.S.'s and M.C.'s trial testimony, and petitioner's statements to Sgt. Clemons, the jury found that the State proved beyond any reasonable doubt each of the elements of first-degree sexual assault by sexual intrusion. M.S. testified that petitioner put his "private spot" *in* her front and back "private spot." (Emphasis added.) M.S. also testified that petitioner touched her private spots with his mouth and hand "a whole lot." M.C. testified petitioner "stuck his private part against [her private part] and he stuck his mouth against my private part . . . a lot." On this evidence, the jury found that petitioner committed first-degree sexual assault by sexual intrusion, i.e., that petitioner penetrated, however slightly, M.S.'s and M.C.'s sex organ or anus for his own sexual desire.

Accordingly, we find the circuit court did not constructively amend Counts 1, 2, 3, 10, 11, or 12 of petitioner's indictment by broadening the charges or allowing the jury to convict him of crimes not contained in the indictment.

Petitioner's second and final assignment of error is that the circuit court plainly erred by failing to instruct the jury on first-degree sexual abuse as a lesser-included offense of first-degree sexual assault with regard to the four counts alleging first-degree sexual assault by digital penetration. Petitioner admits that he did not request such an instruction or object to the absence of such an instruction, but argues that the circuit should have given such an instruction of its own accord.

We note that under West Virginia Code § 61-8B-7(a)(3), a person commits first-degree sexual abuse when the "person, being fourteen years old or more, subjects another person to sexual contact who is younger than twelve years old."

We employ the following two-part test to determine whether a lesser-included offense instruction is warranted in a criminal case:

> The question of whether a defendant is entitled to an instruction on a lesser-included offense involves a two-part inquiry. The first inquiry is a legal one having to do with whether the lesser offense is by virtue of its legal elements or definition included in the greater offense. The second inquiry is a factual one which involves a determination by the trial court of whether there is evidence which would tend to prove such lesser included offense.

Syl. Pt. 3, *State v. Wilkerson*, 230 W. Va. 366, 735 S.E.2d 32 (2013) (quotations and citations omitted). The first prong of *Wilkerson's* two-part inquiry is satisfied in this case because first-degree sexual abuse is generally considered to be a lesser included offense of first-degree sexual assault. *See State v. Dellinger*, 178 W. Va. 265, 267, 358 S.E.2d 826, 828 (1987); *State v. Daniel C.*, No. 15-0152, 2016 WL 143887, at *1 (W. Va. Jan. 11, 2016)(memorandum decision). Specifically, the elements of a sexual assault cannot be committed without first engaging in the sexual contact proscribed by the sexual abuse statute. *Id.*

As for the second prong of the *Wilkerson* analysis, whether there was evidence which would tend to prove a lesser-included offense, petitioner claims he satisfied it because neither M.S. nor M.C. testified to digital penetration.

6

We disagree with petitioner's narrow characterization of the evidence at trial. M.S. testified that (1) petitioner "touched her private spots with his mouth and his *hand*" and that his *hand* was underneath her underwear "down there." Conversely, M.C. did not specifically state that petitioner touched her "private part" with his hand. Instead, M.C. testified that petitioner touched her with his "private part" and his mouth. However, the jury also heard Sgt. Clemons's phone interview with petitioner, during which Sgt. Clemons asked petitioner, "You didn't put your penis *inside* [your children], or anything like that?" (Emphasis added.) Petitioner answered, "No." Sgt. Clemons then asked, "Was it just your *fingers*?" (Emphasis added.) Petitioner answered, "Yes." The jury fairly interpreted this statement as petitioner admitting to placing his fingers (i.e., his hand), but not his penis, *inside* M.S. and M.C. Moreover, later, in the interview, petitioner admitted to Sgt. Clemons that he touched the outside of M.C.'s vagina and M.S.'s vagina; however, he denied inserting his fingers into their vaginas or penetrating any of the children. Consequently, the evidence was conflicting as to whether petitioner digitally penetrated M.S. and/or M.C.

We have said that "[c]redibility determinations are for a jury and not an appellate court." *See State v. Guthrie*, 194 W. Va. 657, 669, 461 S.E2d 163, 175 (1995). Here, having heard all the evidence, the jury clearly found that petitioner penetrated M.C.'s and M.S.'s vaginas with his hand, however slightly, because they found him guilty of first-degree sexual assault on the four counts claiming digital penetration. If the jury had found otherwise, they would have acquitted petitioner of those counts. Moreover, if the jury had been instructed on first-degree sexual abuse, it might have found that the evidence was sufficient to convict petitioner of that charge. Thus, petitioner's trial counsel may well have purposely not sought a first-degree sexual abuse instruction as a part of their trial strategy. As noted above, "[t]o trigger application of the "plain error" doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Miller*, 194 W. Va. 7, 459 S.E.2d 114, at syl. pt. 7. On the facts above, petitioner cannot show that the lack of a jury instruction on the lesser-included offense of first-degree sexual abuse affected the fairness or integrity of the trial. Accordingly, we find that petitioner fails to prove error, let alone plain error, with regard to such an instruction.

Finally, we find that the circuit court, in its December 4, 2018, sentencing order, failed to comport with the Sex Offender Registration Act, West Virginia Code §§ 15-12-1 to -10. That is, the circuit court failed to require petitioner to register as "sex offender" with the West Virginia State Police as required by West Virginia Code § 15-12-2(b). That section provides:

> Any person who has been convicted of an offense or an attempted offense or has been found not guilty by reason of mental illness, mental retardation, or addiction of an offense under any of the following provisions of this code . . . shall register as set forth in § 15-12-2(d) of this code and according to the internal management rules promulgated by the superintendent under authority of § 15-2-25 of this code:
>
> (1) § 61-8A-1 et seq. of this code;
> (2) § 61-8B-1 et seq. of this code, including the provisions of former § 61-8B-6 of this code, relating to the offense of sexual assault of a spouse, which was repealed by an act of the Legislature during the 2000 legislative session;

(3) § 61-8C-1 et seq. of this code;

(4) § 61-8D-5 and § 61-8D-6 of this code;

(5) § 61-2-14(a) of this code;

(6) § 61-8-6, § 61-8-7, § 61-8-12, and § 61-8-13 of this code;

(7) § 61-3C-14b of this code, as it relates to violations of those provisions of chapter 61 listed in this subsection; or

(8) § 61-14-2, § 61-14-5, and § 61-14-6 of this code: Provided, That as to § 61-14-2 of this code only those violations involving human trafficking for purposes of sexual servitude require registration pursuant to this subdivision.

As noted above, the jury convicted petitioner on counts 1-18 and 23-26. Accordingly, petitioner was convicted of first-degree sexual assault under West Virginia Code § 61-8B-3(a)(2); first-degree sexual abuse under West Virginia Code § 61-8B-7; sexual abuse by a parent, guardian, or custodian under West Virginia Code § 61-8D-5(a); and incest under West Virginia Code § 61-8-12(a). Based on these convictions, petitioner is required to register as a sex offender under West Virginia Code § 15-12-2(b). Therefore, we find that the circuit court erred in failing to comply with the Sex Offender Registration Act because it did not require petitioner to register as a sex offender upon his release from prison.

For the foregoing reasons, we affirm the circuit court's sentencing order in part, but reverse the order to the extent the circuit court failed to apply the mandatory requirements of the Sex Offender Registration Act. We therefore remand the case with instructions to the circuit court to amend petitioner's sentencing order and to require that he register as a sex offender upon his release from prison.

Affirmed, in part, reversed, in part, and remanded with instructions.

**ISSUED:** March 23, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

8