**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 20-1002** (Berkeley County CC-02-2019-F-240)

**Bryan Lynn Fishack,**
**Defendant Below, Petitioner**

# MEMORANDUM DECISION

Petitioner Bryan Lynn Fishack, by counsel Matthew T. Yanni, appeals the Circuit Court of Berkeley County's November 17, 2020, order sentencing him to a determinate term of ninety years of incarceration for his first-degree robbery conviction, an indeterminate term of not less than one nor more than five years for his conspiracy to commit first-degree robbery conviction, and an indeterminate term of not less than two nor more than ten years for his assault during the commission of a felony conviction. Respondent State of West Virginia, by counsel Patrick Morrisey and Katherine M. Smith, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On the evening of February 24, 2019, petitioner and Richard Kline approached Summer Melton in a Target parking lot. Ms. Melton noticed the men approaching, quickly placed her children in the car, and hurried to get into the driver's seat when petitioner pulled her backwards, struck her five to six times, and grabbed for her purse, which contained two checkbooks, $285, multiple gift cards, her cell phone, and a knife. Mr. Kline, too, grabbed for Ms. Melton's purse. The men succeeded in taking the purse and ran out of the parking lot to their car, which was parked nearby. Law enforcement was called, and a witness, Joshua Dudley, pursued the men until law enforcement reached them and stopped their vehicle. Petitioner and Mr. Kline were subsequently

1

indicted for first-degree robbery, conspiracy to commit robbery, and assault during the commission of a felony.[1]

Petitioner's two-day jury trial began on September 16, 2020.[2] Mr. Dudley testified that he was alerted to the robbery when he heard "a loud scream, and when I look over, a gentleman is yanking a purse from a lady's arm and they take off running with it."[3] Mr. Dudley called 911, provided dispatch with the license plate number of petitioner's car, and remained on the phone with 911 until law enforcement stopped petitioner's car.

Berkeley County Sheriff's Office Deputy Micah Hutchins testified that he joined the investigation at the location where petitioner's vehicle was stopped. He recounted that the officers discovered a purse "over the edge of the bridge" near where petitioner's vehicle was stopped, which contained "items belonging to the victim," including one checkbook. The officers also located a wallet, which likewise contained items belonging to Ms. Melton. Deputy Hutchins then drove to the Target and obtained the security footage of the parking lot from the store's surveillance cameras, which was played for the jury.

Berkeley County Sheriff's Office Deputy David Ritchie testified that he became involved in the investigation once petitioner and his codefendants were brought to the Sheriff's Office for processing. Petitioner consented to a search of his vehicle, so it, too, was brought to the Sheriff's Office. Deputy Ritchie testified that he did not "specifically remember being involved in the search [of petitioner's vehicle], . . . but I was a witness and stood by—outside the garage while it was being conducted." Deputy Ritchie testified further that petitioner was "present for the search of the vehicle" and that he "remember[ed] standing beside [petitioner]." "Some of the victim's belongings were found in the vehicle," the officer continued, and he knew they belonged to Ms. Melton because "[o]ne of the items was a checkbook that had her name on it." Deputy Ritchie identified Deputy Kolb as the officer who found the checkbook. Deputy Kolb did not testify at trial, however, because he was on military leave.

Ms. Melton testified to the attack and robbery. She identified petitioner for the jury as the individual who struck her, and she identified petitioner and Mr. Kline as the individuals who stole her purse.

At the conclusion of the trial, the jury found petitioner guilty of all three counts.[4]

---

[1] A third individual, Lindsay Dion, was stopped with petitioner and Mr. Kline. Ms. Dion reportedly acted as a lookout for the two men, and she was indicted with them for conspiracy to commit robbery.

[2] Petitioner and Mr. Kline were tried together; Ms. Dion did not appear for trial.

[3] On cross-examination, Mr. Dudley clarified that "there was another man next to [the man who was yanking the purse] but only one was grabbing the purse."

[4] Mr. Kline was convicted of larceny and conspiracy to commit robbery. He was acquitted of assault during the commission of a felony.

Petitioner filed a motion for a new trial on September 28, 2020. Petitioner acknowledged that "he should have objected to Deputy Ritchie's testimony regarding the checkbook being found in [petitioner's] car," but he stated that he believed Deputy Ritchie found the checkbook, and "[i]t did not become clear until cross-examination that the checkbook was actually found by Deputy Kolb and that Deputy Ritchie had no knowledge of its existence or the location in which it was found outside of his conversations with Deputy Kolb." Petitioner argued that because Deputy Kolb was unavailable to testify, "his testimony presented through Deputy Ritchie should have been excluded for violating the Confrontation Clause."

The court denied petitioner's motion for a new trial. It found that petitioner "failed to object to the testimony in question during the trial. As such, the [petitioner] has failed to preserve that issue." The court also found that petitioner "was afforded a fair trial, and the introduction of the testimony is not sufficient grounds for a new trial." The court sentenced petitioner to ninety years of incarceration for his first-degree robbery conviction, not less than one nor more than five years for his conspiracy to commit first-degree robbery conviction, and not less than two nor more than ten years for his assault during the commission of a felony conviction. The court further ordered these sentences to run consecutively. It is from the court's November 17, 2020, sentencing order that petitioner appeals.

Petitioner raises one assignment of error on appeal, in which he claims that the circuit court erred in denying his motion for a new trial on the grounds that Deputy Ritchie's testimony was not based on his personal knowledge but, rather, "clearly based upon the statement or statements of Deputy Kolb." Therefore, according to petitioner, Deputy Ritchie's testimony that one of Ms. Melton's checkbooks was found in petitioner's vehicle, without allowing petitioner to confront Deputy Kolb, violated the Confrontation Clause contained within the United States and West Virginia Constitutions. Petitioner acknowledges that he failed to object at trial to Deputy Ritchie's testimony on this ground, but he argues that the circuit court's error amounts to plain error. Petitioner further asserts that he was prejudiced by this error because "the best evidence that [petitioner's] car was used after he robbed Summer Melton is the checkbook that was supposedly found in the vehicle." Because the finding of Ms. Melton's checkbook in the vehicle was "inconsistent with the other remaining evidence," which was found on or near the highway, petitioner presumes that "[s]urely this was powerful testimony to convince the jury that they had the right person."

> In reviewing a circuit court's order addressing a motion for a new trial,
>
> we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, in part, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000). In light of petitioner's failure to object to the challenged testimony below, petitioner may only prevail on appeal if the circuit court committed plain error by allowing Deputy Ritchie to testify concerning the checkbook discovered by Deputy Kolb. *See State v. Miller*, 194 W. Va. 3, 18, 459 S.E.2d 114, 129 (1995) ("The 'plain error' doctrine grants appellate courts, in the interest of justice, the authority to notice

3

error to which no objection has been made."). To succeed in demonstrating plain error, there must be "(1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at 7, 459 S.E.2d at 118, Syl. Pt. 7, in part. An error is plain when it is "'clear' or 'obvious.'" *Id.*, Syl. Pt. 8, in part. "To affect substantial rights means the error was prejudicial. It must have affected the outcome of the proceedings in the circuit court, and the defendant rather than the prosecutor bears the burden of persuasion with respect to prejudice." *Id.*, Syl. Pt. 9, in part.

Petitioner has failed to demonstrate that the court erred in denying his motion for a new trial as he has failed to establish error in the first place, much less one that affected his substantial rights. Petitioner correctly recites that

> [p]ursuant to *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Confrontation Clause contained within the Sixth Amendment to the *United States Constitution* and Section 14 of Article III of the *West Virginia Constitution* bars the admission of a testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness.

Syl. Pt. 6, *State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006); however, he fails to specifically identify any out-of-court statement presented by Deputy Ritchie, and the trial transcript does not support petitioner's generic assertions that Deputy Ritchie's testimony was "clearly based" on Deputy Kolb's statements or that Deputy Ritchie's testimony included "testimonial statement[s] by" Deputy Kolb. The transcript, in fact, reflects that Deputy Ritchie witnessed the search, and there is no indication that Deputy Ritchie's testimony was not based on his personal knowledge and observations. Without identification of any testimonial statement made by Deputy Ritchie, petitioner has not established any error, let alone plain error.

Although petitioner's failure to demonstrate an error in the first instance ends the inquiry, we nevertheless note that, even if error had been demonstrated, petitioner was not prejudiced. Petitioner and his codefendants were viewed mid-crime by Mr. Dudley, who, after seeing petitioner "yanking a purse from [Ms. Melton's] arm," pursued the codefendants until they were stopped by police. The police recovered Ms. Melton's personal items near where they stopped petitioner's vehicle, and Ms. Melton identified her assailants for the jury. Even without the challenged testimony, there was certainly enough evidence to convince the jury that they had the right person. *See* Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995) (holding that the evidence is sufficient when "any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt").

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** January 12, 2022

4

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton